UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AUGUST IMAGE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ALLWRITE COMMUNICATIONS INC., D/B/A HERS MAGAZINE,<br><br>    Defendant. | CIVIL ACTION NO.<br><br>1:23-CV-910-SEG |

**O R D E R**

This matter is before the Court on the issue of damages for Plaintiff August Image, LLC's ("August Image") claim of copyright infringement. The background of this case is set forth in the Court's order on Plaintiff's motion for summary judgment. (Doc. 28.) In that order, the Court granted Plaintiff's motion for summary judgment on its copyright infringement claim as to liability and injunctive relief, but reserved its determination on Plaintiff's request for damages and the willfulness of Defendant AllWrite Communications, Inc.'s ("AllWrite") infringement pending further briefing. (*Id.*) Plaintiff has filed a supplemental brief addressing the issues of damages and willfulness, (Doc. 30), to which Defendant has not responded.

A copyright infringer may be liable either for "the copyright owner's actual damages and any additional profits of the infringer" or for statutory damages, at the election of the copyright owner. 17 U.S.C. § 504(a), (c). "The

plaintiff may make its election between actual and statutory damages at any time before final judgment is rendered." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1283 (11th Cir. 2015) (cleaned up). Here, August Image has elected to recover statutory damages for infringement of the Fifth Photograph, which it claims was willful, and seeks actual damages for infringement of the remaining photographs. (Doc. 24 at 18-21.) The Court first addresses August Image's application for actual damages and then its request for statutory damages.

## I.   Actual Damages

The Copyright Act "does not define the term 'actual damages,' nor does it prescribe a method for calculating such damages." *Dash v. Mayweather*, 731 F.3d 303, 312 (4th Cir. 2013). As such, "courts have recognized several methods for calculating the compensable loss suffered by a copyright owner as a result of infringement." *Id.* To establish actual damages, a plaintiff must "demonstrate a 'causal connection' between the defendant's infringement and an injury to the market value of the plaintiff's copyrighted work at the time of infringement." *Pronman v. Styles*, 676 F. App'x 846, 848 (11th Cir. 2017) (quoting *Montgomery v. Noga*, 168 F.3d 1282, 1294 (11th Cir. 1999)). This injury is usually "measured by the revenue that the plaintiff lost as a result of the infringement." *Montgomery*, 168 F.3d 1282 at 1295 n.19. However, several courts have recognized that a copyright owner may, where appropriate, "obtain

the market value of the fee the owner was entitled to charge for [the infringer's] use" of the copyrighted work. *On Davis v. The Gap, Inc.*, 246 F.3d 152, 165 (2d Cir. 2001); *see Dash*, 731 F.3d at 312 ("Another cognizable measure is the fair market value of the licensing fee the owner was entitled to charge for the infringer's use of his copyrighted work." (cleaned up)); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003) ("It is not improper for a jury to consider either a hypothetical lost license fee . . . to determine actual damages, provided the amount is not based on undue speculation." (cleaned up)).

Although the fair market value of a licensing fee can provide a measure of actual damages, "awarding the copyright owner the lost license fee can risk abuse" because an owner "may claim unreasonable amounts as the license fee[.]" *On Davis*, 246 F.3d at 166. Courts therefore must look to the fair market value of the copyrighted work and not base actual damages calculations on "undue speculation." *Id.* (quoting *Abeshouse v. Ultragraphics, Inc.*, 754 F.2d 467, 470 (2d Cir. 1985)); *Bell v. Taylor*, 827 F.3d 699, 709 (7th Cir. 2016) (explaining that a copyright holder must show the fair market value of the appropriation of a copyrighted work with "sufficient[ ] concrete[ness]"). The goal of the inquiry is to ascertain "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." *On Davis*, 246 F.3d at 167.

3

Sometimes plaintiffs in copyright infringement actions employ—as August Image does here—"benchmark licenses" involving works other than those at issue to estimate licensing fees. Evidence of benchmark licensing fees "may, in some cases, be sufficient to support the conclusion that a copyright holder would have been entitled to such a fee for the use of his work; however, such evidence may properly be rejected as a measure of damages if it is too speculative." *Dash*, 731 F.3d at 319. For instance, the use of benchmark licenses may be appropriate "when the benchmark licenses contemplate 'comparable uses of comparable works.'" *Id.* (quoting *Real View, LLC v. 20–20 Techs., Inc.*, 811 F. Supp. 2d 553, 557 (D. Mass. 2011)). "But, if the benchmarks relied on are inapposite, they may, without more, be too speculative to support a copyright holder's claim for actual damages." *Id.*; *see Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331 (S.D.N.Y. 2003) ("[C]ourts have recognized the error of beginning with a benchmark license for a use different from that made by the infringer."); *see also Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990) ("[A] particular fee is not the correct measure of damages unless that which is provided by the patentee to its licensees for that fee is commensurate with that which the defendant has appropriated."); *Real View*, 811 F. Supp. 2d at 557 ("Courts have insisted on objective evidence supporting the fair market value of a hypothetical license fee.").

Here, August Image seeks $120,000 in actual damages for infringement of eleven of the twelve copyrighted photographs that AllWrite infringed.[1] (Doc. 24 at 23.) August Image has proposed annual license fees for each photograph as the measure of actual damages. (Doc. 24 at 19-20.) However, in its motion for summary judgment order, the Court noted several problems with August Image's methodology for estimating these annual licensing fees. (Doc. 28 at 30-33.)

First, the Court pointed out that August Image did not base its damages calculation on past licensing fees paid for the copyrighted photographs at issue in this case. (Doc. 28 at 30.) Instead, August Image provided a "sampling" of licensing fees paid for *other* photographs taken by the same photographers involved here. (*See* Doc. 24-4 ¶¶ 49, 52, 55, 57, 60, 62.) Those photographs depict different, sometimes extraordinarily famous, celebrities that are not depicted in the copyrighted photographs at issue, which, of course, may affect the licensing fees commanded.

Second, the Court expressed concern that the sample licenses do not appear to involve comparable uses to those which AllWrite made of the photographs. (Doc. 28 at 31.) While AllWrite used the photographs in an online magazine, the sample licenses run the gamut from editorial use in print

---

[1] August Image seeks statutory damages for infringement of the Fifth Photograph.

5

runs of 500,000 copies and one-time cover uses, to billboards and social media marketing campaigns. (Doc. 24-4 ¶¶ 49, 52, 55, 57, 60, 62.) Moreover, August Image failed to provide any testimony that establishes whether or how these sample licenses compare in value to a potential license for an online magazine on the scale of Hers Magazine.

Finally, the Court emphasized that August Image had not demonstrated how it averaged—or otherwise used—the sample license fees to calculate its estimated annual license amounts. (Doc. 28 at 31.) Indeed, the declaration of Bill Hannigan, August Image's founder and CEO, simply lists the sample license fees, and then "assum[es]" the resulting estimated annual license amount, which is almost always exactly $3,000 or $3,500. (Doc. 24-4 ¶¶ 49-66.) No explanation was provided of how the estimated annual license fees were derived from the sample license fees.

August Image's supplemental briefing does not adequately address the Court's concerns regarding its proposed calculation of actual damages. The only additional evidence August Image has submitted to support its damages calculation is a declaration from its employee, Lauren Kelly, Director of Copyright at August Image. (Doc. 30-1.) Even accepting Ms. Kelly's statement that "[t]he value of photographs taken by Plaintiff's subject photographers is only partially tied to the identity of the celebrity[,]" (*Id.* ¶ 3), August Image has still not explained why the sample licenses it has provided are comparable in

value to the hypothetical license AllWrite would have had to obtain for use of the copyrighted photographs on its website.

To name but one example, with respect to the First Photograph, August Image presents sample license fees of $6,500 and $1,700 for a "[o]ne time cover use (print only)" of a photograph depicting Betty White and for a "[o]ne time editorial use in a collective run of 500,000 copies [North America] (print only)" of a photograph depicting Matthew McConaughey. (Doc. 20-3 ¶ 49.) Both photographs were taken by the same photographer who composed the First Photograph. (*Id*.) August Image does not, however, provide any evidence suggesting that the uses contemplated by those licenses are comparable in value to AllWrite's infringing use of the First Photograph. Indeed, AllWrite did not use the photographs in a widely distributed print publication, but rather on its website.

Further, August Image has yet to indicate what methodology it used to calculate the estimated license fees—which almost always amount to $2,500, $3,000, or $3,500—from the sample licensing fees provided. Instead, Ms. Kelly merely provides the conclusory statement that she has estimated the "fair market licensing value of each photograph" based "on the reputation of each photographer, their licensing history, and the rarity/desirability of the subject of the photographs[.]" (Doc. 30-1 ¶ 4.)

Based on the evidence submitted, the Court finds that estimating hypothetical licensing fees for AllWrite's infringement of August Image's photographs presents questions of fact that preclude a determination of actual damages on summary judgment.[2] *See, e.g., Ordonez-Dawes v. Turnkey Props., Inc.*, No. 06-60557-CIV, 2008 WL 828124, at *4 (S.D. Fla. Mar. 27, 2008) (denying summary judgment as to damages despite defendants' default and setting the case for an evidentiary hearing on actual and statutory damages); *Lifetime Homes, Inc. v. Residential Dev. Corp.*, 510 F. Supp. 2d 794, 803 (M.D. Fla. 2007) (finding summary judgment on copyright damages inappropriate where "the Court [was] unable to determine which figures in Defendants' records should be included in determining the profits earned by [the] alleged infringing activities"); *Intown Enters., Inc. v. Barnes*, 721 F. Supp. 1263, 1267 (N.D. Ga. 1989) (explaining, in a copyright infringement case, that "the record

---

[2] While the Court recognizes that Defendant did not submit any evidence opposing Plaintiff's damages calculations, it is nevertheless Plaintiff's burden to prove the amount of damages sustained. *See Bell v. Taylor*, 827 F.3d 699, 710 (7th Cir. 2016) ("Bell argues that defendants did not present any evidence contradicting Bell's affidavit or price listing. However, it was Bell's burden to prove damages, and defendants were not required to produce any evidence showing a lack of damages."); *Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1088 (5th Cir. 1982) ("The plaintiff bears the burden of proof to show the amount, as well as the fact, of damages."); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'" (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979))).

. . . as to damages has not been well-developed" and that "issues of material fact preclude summary judgment as to damages").

Moreover, as the licensing fee estimates provided by August Image largely rest on the declarations of its own employees, there are questions of witness credibility that are better suited for resolution by the factfinder at trial. *See United States v. Grushko*, 50 F.4th 1, 11 (11th Cir. 2022) ("Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position . . . to assess the credibility of witnesses." (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)). Accordingly, summary judgment is denied as to August Image's request for actual damages.

## II.   Statutory Damages

The Copyright Act provides for statutory damages of "a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). "The court in its discretion may increase the award . . . to a sum of not more than $150,000" if it finds "that infringement was committed willfully." *Id.* § 504(c)(2). In arriving at an exact figure of statutory damages, courts "should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990). "[W]illful copyright infringement . . . encompasses reckless disregard of the possibility that one's

9

actions are infringing a copyright." *Yellow Pages,* 795 F.3d at 1272. To calculate statutory damages, courts often award "a multiple of the applicable licensing fee a defendant would have paid but for the infringement." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 356 (S.D.N.Y. 2017); *see, e.g., Corson v. Gregory Charles Interiors, LLC*, No. 9:19-CV-81445, 2020 WL 6323863, at *2 -3 (S.D. Fla. Aug. 7, 2020); *Joe Hand Promotions, Inc. v. Alburl,* No. 5:18-CV-1935-LCB, 2020 WL 836844, at *6 (N.D. Ala. Feb. 20, 2020); *Major Bob Music v. Stubbs*, 851 F. Supp. 475, 481 (S.D. Ga. Mar. 29, 1994).

While the language of the Copyright Act designates "the court" as the decisionmaker for statutory damages, the United States Supreme Court has held that "the Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including *the amount* itself." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) (emphasis added). Thus, "if a party so demands, a jury must determine the actual amount of statutory damages under § 504(c) in order to preserve the substance of the common-law right of trial by jury." *Id.* at 355 (cleaned up); *Yellow Pages*, 795 F.3d at 1283. In other words, because the determination of statutory damages is inherently discretionary, "[w]hat number between $750 and $30,000 is 'just' recompense is a question for the jury, unless both sides agree to decision by the court." *BMG Music v. Gonzalez*,

10

430 F.3d 888, 892 (7th Cir. 2005) (holding that where a plaintiff seeks more than the minimum amount of statutory damages, the parties are entitled to have a jury determine the amount).

Further, the question of whether an infringement was willful—as an "issue[ ] pertinent to an award of statutory damages"—must also be determined by a jury. *Feltner*, 523 U.S. at 355; *see Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 790 (S.D. Tex. 2013) ("*Feltner* mandates that the issue of willfulness be determined by a jury."); 4 Nimmer on Copyright § 14.04[B][3] ("Seventh Amendment concerns require that the 'court' to make the willfulness determination be the jury"); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) ("As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial.").

In this case, both parties demanded their right to a jury trial in their pleadings. (Doc. 11 at 35; Doc. 13 at 25.) August Image seeks $37,800 in statutory damages if willful infringement is found, (Doc. 24 at 21), or in the alternative, $30,000 if willfulness is not found. (Doc. 30 at 2.) Consistent with *Feltner*, both the fixing of the amount of statutory damages, as well as the subsidiary issue of willfulness, must be submitted to a jury. Summary judgment is therefore denied as to Plaintiff's request for statutory damages.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment (Doc. 24) is **DENIED** as to its request for actual and statutory damages. Because issues of fact preclude the Court from deciding the extent of Plaintiff's damages, that determination will be submitted to a jury. Should the parties prefer to submit the determination of damages to the undersigned at a bench trial, they may file a joint notice so stating.

The parties are **DIRECTED** to submit a proposed consolidated pretrial order within 30 days of the entry of this order. The parties are reminded that this Court offers litigants a dispute resolution program by which parties may request mediation with a United States Magistrate Judge. If the parties are interested in availing themselves of this procedure, they may file a joint motion requesting that the case be referred for mediation.

**SO ORDERED**, this 10th day of November, 2025.

_____
SARAH E. GERAGHTY
United States District Judge